UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


KRISTOFFERSON TYRONE THOMAS,

                Petitioner,                    Case No. 1:17-cv-476

v.                                        Honorable Robert J. Jonker

SHANE JACKSON,
*named as Sherman Campbell*,

                Respondent.
_____/


## OPINION

        This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## Factual Allegations

Petitioner Kristofferson Tyrone Thomas presently is incarcerated at the Carson City Correctional Facility. Following a jury trial in the Ingham County Circuit Court, Petitioner was convicted of one count each of being a felon in possession of a firearm (felon in possession), MICH. COMP. LAWS § 750.224f, assault with a dangerous weapon (felonious assault), MICH. COMP. LAWS § 750.82, assault with intent to murder, MICH. COMP. LAWS § 750.83, and possession of a firearm during the commission of a felony (felony firearm), MICH. COMP. LAWS § 750.227b. On March 11, 2015, the trial court sentenced him, as fourth-offense felony offender, MICH. COMP. LAWS § 769.12, to respective terms of imprisonment of 10 to 25 years, 10 to 15 years, 28 to 60 years, and 2 years.

Petitioner appealed his convictions to the Michigan Court of Appeals. Appellate counsel raised two issues, and Petitioner filed a pro per supplemental brief that raised a third multi-part claim:

I. Defendant was denied a fair trial because detective Brad St. Aubin expressed the opinion, with no basis in fact, that a cell phone associated with Chanel Long was in fact the defendant's cell phone, and to the extent that defendant's trial attorney did not object to detective St. Aubin's opinions, the defendant was denied his constitutional right to effective assistance of counsel.

II. The testimony of detective Lee McAllister and his maps were inadmissible under mre 702 and the defendant as a result was denied a fair trial and to the extend that defendant's trial attorney did not object to detective McAllister's testimony, the defendant was denied his constitutional right to effective assistance of counsel.

III. Trial counsel rendered ineffective assistance when (a) failed to properly investigate, and call Karen Allen to authenticate her e-mail/text message and question Olympia Mack regarding her receipt of Allen's e-mail/text message; (b) failing to impeach D. Wayne Hobbs with firearm conviction in relation to prior testimony; and (c) failing to investigate feed from city camera(s) near the 5700 of Richwood at the time of the shooting.

-2-

(Pet., ECF No. 1, PageID.7, 9, 11.)  In an unpublished opinion issued on June 21, 2016, the court

of appeals denied all appellate grounds and affirmed the convictions.  Petitioner sought leave to

appeal to the Michigan Supreme Court, raising the same three issues.  In an order issued on

November 30, 2016, the supreme court denied leave to appeal.  Petitioner filed his habeas petition

on May 22, 2017, raising the same three grounds presented to and rejected by the Michigan appellate

courts.

## Standard of Review

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996,

PUB. L. 104-132, 110 STAT. 1214 (AEDPA).  *See Penry v. Johnson*, 532 U.S. 782, 792 (2001).  The

AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect

to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  The AEDPA has

"drastically changed" the nature of habeas review.  *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir.

2001).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant

to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits

in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved

an unreasonable application of, clearly established federal law as determined by the Supreme Court

of the United States; or (2) resulted in a decision that was based upon an unreasonable determination

of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).

This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372,

1376 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme

Court.  28 U.S.C. § 2254(d).  This Court may consider only the "clearly established" holdings, and

not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 132 S. Ct. 38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 2015 WL 1400852, at *3 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted).

Where the state appellate court has issued a summary affirmance, it is strongly presumed to have been made on the merits, and a federal court cannot grant relief unless the state

court's result is not in keeping with the strictures of the AEDPA. *See Harrington*, 562 U.S. at 99; *see also Johnson v. Williams*, 133 S. Ct. 1088, 1094 (2013); *Werth v. Bell*, 692 F.3d 486, 494 (6th Cir. 2012) (applying *Harrington* and holding that a summary denial of leave to appeal by a Michigan appellate court is considered a decision on the merits entitled to AEDPA deference). The presumption, however, is not irrebuttable. *Johnson*, 133 S. Ct. at 1096. Where other circumstances indicate that the state court has not addressed the merits of a claim, the court conducts *de novo* review. *See id.* (recognizing that, among other things, if the state court only decided the issue based on a state standard different from the federal standard, the presumption arguably might be overcome); *see also Harrington*, 562 U.S. at 99-100 (noting that the presumption that the state-court's decision was on the merits "may be overcome when there is reason to think some other explanation for the state court's decision is more likely"); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989). Applying the foregoing standards under the AEDPA, I find that Petitioner is not entitled to relief.

## Discussion

I.      Admission of Lay Opinion Testimony

      In his first ground for habeas relief, Petitioner alleges that he was denied a fair trial when Detective Brad St. Aubin was permitted to introduce lay opinion testimony when St. Aubin indicated his belief that the purpose of one of Petitioner's jailhouse telephone calls was to obtain an alibi. The Michigan Court of Appeals rejected his claim as follows:

> Defendant first argues that he was denied his right to a fair trial based on the admission of impermissible lay witness testimony. We disagree. Defendant objected to detective Brad St. Aubin's testimony that St. Aubin believed the purpose of one of defendant's jailhouse phone calls was to obtain an alibi. Defendant's remaining claims of error, including his due process claim, were unpreserved because defendant failed to object at trial. *People v. Metamora Water Serv, Inc*, 276 Mich. App 376, 382; 741 NW2d 61 (2007). "Preserved evidentiary rulings are reviewed for an abuse of discretion." *People v. Unger*, 278 Mich. App 210, 216; 749 NW2d 272 (2008). "Unpreserved claims of evidentiary error are reviewed for plain error affecting the defendant's substantial rights." *People v. Benton*, 294 Mich. App 191, 202; 817 NW2d 599 (2011). We also review unpreserved constitutional claims for plain error. *People v. Thomas*, 260 Mich. App 450, 453–454; 678 NW2d 631 (2004).

> Lay opinion testimony, such as that at issue here, is permitted pursuant to MRE 701, which provides:

>> If a witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

> Defendant first complains of St. Aubin's testimony regarding a phone call defendant made in jail, arguing that the testimony was not based on fact. During trial, St. Aubin testified that defendant told him that he was at a birthday party on the evening of the shooting, but he would not give St. Aubin the names of others at the birthday party or its location. Olympia Mack testified at trial that defendant was at her daughter's birthday party at the time of the offense, thereby providing an alibi for defendant. On rebuttal, St. Aubin testified regarding a phone call defendant made in jail where he spoke to a female, presumably his girlfriend Chanel Long. Defendant asked her to contact a person named "O," and "pull down on her." St. Aubin

-6-

explained that "pull down on her" "can mean pull somebody off to the side to leverage them alone by themselves," or "[i]t could be threaten somebody," or that "[i]t could be just reach out to that person." St. Aubin thereafter testified that he believed "O" referred to Mack and that defendant was trying to obtain an alibi from Mack. Based on the record, we conclude that St. Aubin's testimony was rationally based on his perceptions and no error occurred. Additionally, St. Aubin made clear to the jury that he did not know for certain who "O" was and that his testimony was merely his opinion.

*People v. Thomas*, No. 326645, 2016 WL 3421403, at *1 (June 21, 2016).

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67-68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. State-court evidentiary rulings cannot rise to the level of due process violations unless they offend "'some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)) (other internal quotations omitted); *accord Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552 (6th Cir. 2000).

Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently. The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on

a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000).

Petitioner has not met this difficult standard. No Supreme Court decision either holds or suggests that the admission of lay opinion testimony violates due process. As a consequence, the admissibility of the evidence is purely one of state law, not cognizable on habeas review. *Estelle*, 502 U.S. at 67-68. The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (holding that "'a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'") (quoting *Bradshaw*, 546 U.S. at 76).

Moreover, to the extent that Petitioner argues that his attorney erred by not objecting to the testimony on due process grounds, his claim is wholly without merit. In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130,

135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Petitioner cannot meet the first prong of the *Strickland* standard. As discussed, Petitioner had no due process right to exclude lay opinion testimony. As a result, any motion would have been meritless. Counsel's failure to make a frivolous or meritless motion does not constitute ineffective assistance of counsel. *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010); *O'Hara v. Brigano*, 499 F.3d 492, 506 (6th Cir. 2007); *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000).

In sum, Petitioner fails to demonstrate that the Michigan Court of Appeals' resolution of Petitioner's first habeas ground was either contrary to or an unreasonable application of clearly established Supreme Court precedent.

II. <u>Admission of Expert Opinion Testimony</u>

In Ground II of his habeas application, Petitioner raises another claim about the admission of evidence. He contends that the trial court improperly admitted the expert testimony of Detective Lee McAllister, who used his training to approximate the general location of a certain cell phone from the cell towers accessed at the time the phone was used. He also suggests that the standard set forth in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. at 1993), was unmet, and therefore the admission of the testimony was in violation of federal law and due process. Petitioner

contends that, as cause for his failure to lodge a contemporaneous objection, his trial attorney was

ineffective.

The Michigan Court of Appeals fully analyzed Petitioner's assertions, as follows:

Defendant also argues that detective Lee McAllister's testimony regarding defendant's presumed phone number had no factual basis. During the course of investigation, police obtained Long's cellular telephone. Long had a phone number saved in her phone under defendant's name and photograph. While McAllister acknowledged that he did not know whether defendant had the phone on his person on the day of the offense, he obtained records for the number because it was associated with defendant based on the information obtained from Long's phone. Thus, McAllister's testimony that he associated that phone number with defendant was rationally based on his perception. Accordingly, defendant's claim fails. Further, defense counsel was not ineffective for failing to object to the officers' opinion testimony because any objection would have been futile. Defense counsel is not ineffective for failing to raise a meritless argument or futile objection. *People v. Ericksen*, 288 Mich. App 192, 201; 793 NW2d 120 (2010).

Defendant next argues that he was denied a fair trial based on the improper admission of McAllister's expert testimony pursuant to MRE 702. We disagree. Defendant did not object to McAllister's expert testimony at trial, so this issue is unpreserved. Again, we review unpreserved claims of evidentiary and constitutional error for plain error. *Benton*, 294 Mich. App at 202; *Thomas*, 260 Mich. App at 453-454.

Before trial, McAllister obtained detailed call records for the phone number associated with defendant.[1] The records "detailed the calls that were made to and from the phone and the location the phone was at the time those calls were placed." McAllister testified that he had received training from a software company on how to use call records to plot the calls on a map. He also received training from the Bureau of Alcohol, Tobacco, and Firearms in analyzing the specific information provided by the primary Michigan cellular service providers. McAllister had testified as an expert in this area four to five times previously. Based on his training, McAllister was admitted as an expert in telephone location plotting based on cell phone towers without objection. McAllister proceeded to explain that the call records showed the cell phone towers that were being used by a phone during a call. Using the coverage location of the cell phone tower being used, McAllister plotted the calls on a map. The data placed the phone in the area where the shooting occurred at the time it was committed. On appeal, defendant challenges the admissibility of this type of expert testimony.

MRE 702 governs the admissibility of expert testimony.

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The underpinning of MRE 702 is that the "trial court must ensure that all expert opinion testimony, regardless of whether it is based on novel science, is reliable." *People v. Steele*, 283 Mich. App 472, 481; 769 NW2d 256 (2009).

"When evaluating the reliability of a scientific theory or technique, courts consider certain factors, including but not limited to whether the theory has been or can be tested, whether it has been published and peer-reviewed, its level of general acceptance, and its rate of error if known." *People v. Kowalski*, 492 Mich. 106, 131; 821 NW2d 14 (2012). The trial court "acts as a gatekeeper and has a fundamental duty to ensure that the proffered expert testimony is both relevant and reliable[,]" but "[b]ecause there are many different kinds of experts and expertise, this inquiry is, by necessity, a flexible one, and a court determining the admissibility of expert testimony may consider reliability factors pertinent to the particular type of expert testimony offered and its connection to the particular facts of the case." *Id.* at 120, quoting *Daubert v. Merrell Dow Pharm, Inc*, 509 U.S. 579, 589, 594-595; 113 S Ct 2786; 125 L. Ed. 2d 469 (1993). "[T]he trial court's role as gatekeeper does not require it to search for absolute, to admit only uncontested evidence, or to resolve genuine scientific disputes." *Unger*, 278 Mich. App at 217. Rather, the proper inquiry is whether the expert opinion is rationally derived from a sound foundation, not whether it is ultimately correct or universally accepted. *Id.*

Defendant's sole argument on appeal is that McAllister's testimony was not the product of reliable principles and methods pursuant to MRE 702. Defendant claims that McAllister's opinion that the exact location of a cell phone could be obtained was not based on any sound scientific principles, asserting that it was not tested against known measurements of distance, that McAllister relied on no publications or peer-reviewed articles, there was no known error rate, there were no standards or controls, and there was no showing that the technique was accepted by the scientific community.

Initially, we note that defendant does not accurately represent the record regarding McAllister's testimony. McAllister did not state that he could determine

a cell phone's exact location. In fact, he testified that the locations were an estimate and that he could not pinpoint an exact location of a cell phone.[2] Rather, the evidence showed the cell phone tower a phone was accessing during a call, which he opined provided an approximate location for the device. Further, contrary to defendant's claim, McAllister never testified, nor did his testimony presume, that a cellular phone would always use the closest tower to the device. In fact, he explained that the cell phone towers shown on the map were those accessed by the device, and he did not know if there were other towers that could have been used. He testified that tower use could change minute-by-minute, and can be impacted by any number of factors, including the weather.

Further, we do not agree that the testimony was not the product of reliable principles and methods pursuant to MRE 702. Here, the testimony was based on data provided by the cellular network. Defendant claimed that the information regarding what cell towers were being accessed by the phone was based on McAllister's "belief." That statement is not correct, as the information was obtained from the cellular service provider, and defendant does not challenge the accuracy of the data obtained. Relying on the data, McAllister used his training to analyze the information and compile a map of the cell phone tower locations. As defendant acknowledges, expert testimony need not be scientific in nature. Indeed, there are many kinds of experts and expertise, and the principles and methods depend on the type of expert testimony being presented. *Kowalski*, 492 Mich. at 131. Here, where the evidence was primarily based on the data and McAllister's ability to understand and analyze the data, we disagree that lack of scientific testing would render the evidence unreliable. Further, although such evidence was unable to provide the exact location of a phone, the extent of the information and the limitations were explained to the jury. Finally, as both parties point out, this Court has been asked to review this issue several times, and has declined to hold that such evidence is unreliable per se pursuant to MRE 702. Indeed, defendant cannot direct this Court's attention to any Michigan case where cell phone tracking evidence presented by an expert witness has been rejected. Accordingly, we reject defendant's argument. We similarly reject defendant's argument that his trial counsel was ineffective for failing to object because any objection would have been futile. *Ericksen*, 288 Mich. App at 201.

[1] On appeal, defendant stated that the records for Long's phone number were obtained and presented to the jury. However, as the prosecution points out, this is not an accurate summary of the record. The records were for the phone number listed under defendant's name and photograph in Long's phone.

[2] McAllister explained and distinguished the ability to determine the specific location of a phone, referred to as "pinging."

*Thomas*, 2016 WL 3421403, at **2-4.

To the extent that Petitioner alleges that the evidence was admitted in violation of MICH. R. EVID. 702, his claim is not cognizable in this proceeding, for the reasons fully set forth in the Court's discussion of Petitioner's first ground for habeas relief. *See Estelle*, 502 U.S. at 67-68. The Michigan Court of Appeals' decision that McAllister's testimony met the standard of MICH. R. EVID. 702 therefore is binding on this Court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Stumpf v. Robinson*, 722 F.3d at 746 n.6 (citing *Bradshaw*, 546 U.S. at 76).

Petitioner's argument that the decision violated *Daubert*, 509 U.S. 579, and its successor, *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), fares no better. In both *Daubert* and *Kumho Tire*, the Supreme Court held only that, in federal courts, applying Rule 702 of the Federal Rules of Evidence, opinion testimony was required to meet the standard set forth in those cases. *See Daubert*, 509 U.S. 579 (passim); *Kumho Tire*, 526 U.S. at 141, 147-48, 150. At no time has the Supreme Court held that *Daubert* and *Kunho Tire* provide the standard for evaluating whether an admission of evidence violates due process. Nor can Petitioner show that the admission of McAllister's expert testimony violates a "'principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour*, 224 F.3d at 552 (6th Cir. 2000) (quoting *Egelhoff*, 518 U.S. at 43); *accord Bugh*, 329 F.3d at 512; *Coleman*, 268 F.3d at 439. Indeed, *Daubert* itself overruled the standard for admission for expert testimony that was applied by the federal courts for 70 years. *See Daubert*, 509 U.S. at 589 (overruling *Frye v. United States*, 293 F. 1013, 1014 (1923)). As a consequence, the admission of McAllister's testimony did not violate due process.

Finally, because the Michigan Court of Appeals concluded that the expert opinion testimony was properly admitted, trial counsel's failure to object did not amount to ineffective

assistance of counsel. *See Smith*, 591 F.3d at 523 (an attorney's failure to make a frivolous or meritless motion does not constitute ineffective assistance of counsel); *O'Hara*, 499 F.3d at 506; *Harris*, 204 F.3d 681 at 683.

III.     Ineffective Assistance of Trial Counsel

In his third ground for habeas relief, Petitioner makes a series of claims about his trial attorney's failure to provide him the effective assistance of counsel. First, he claims that defense counsel failed to properly investigate and call Karen Allen to authenticate her email or text message. Second, he claims that his attorney failed to impeach D. Wayne Mack with his prior firearm conviction. Third, he suggests that defense counsel erred in neglecting to seek admission of Yolanda Love's testimony that she heard three or four gunshots, which would have indicated that another person also fired shots. Fourth, Petitioner alleges that trial counsel did not investigate the city camera feeds from the area of the shooting and did not call Ryan Wilcox, in order to impeach Wilcox on his testimony that Chanel Long's automobile appeared on city cameras near the 5700 block of Richwood at the time of the shooting.

The Michigan Court of Appeals exhaustively considered Petitioner's claims of ineffective assistance of counsel:

> Defendant raises claims of ineffective assistance of counsel in a pro se supplemental brief filed pursuant to Supreme Court Administrative Order 2004-6, Standard 4. To preserve a claim of ineffective assistance of counsel, a defendant must make a motion for a new trial or an evidentiary hearing with the trial court. *People v. Heft*, 299 Mich. App 69, 80; 829 NW2d 266 (2012). Defendant never moved for a new trial or a *Ginther* hearing in the trial court. Thus, this issue is unpreserved. Defendant filed a motion to remand for a *Ginther*[3] hearing with this Court, which was denied.[4] "When a defendant did not move in the trial court for a new trial or an evidentiary hearing, this Court's review is limited to mistakes apparent from the record." *Id.*

-14-

"To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v. Nix*, 301 Mich. App 195, 207; 836 NW2d 224 (2013), citing *People v. Armstrong*, 490 Mich. 281, 289-290; 806 NW2d 676 (2011). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Nix*, 301 Mich. App at 207. It is presumed that trial counsel used effective trial strategy, and a defendant has a heavy burden to overcome this presumption. *People v. Payne*, 285 Mich. App 181, 190; 774 NW2d 714 (2009).

Defendant first claims that his trial counsel was ineffective for failing to investigate or call as a witness defendant's sister Karen Allen. Allen sent a message to Mack that was deemed inadmissible hearsay at trial. The substance of this message was that defendant was not the shooter. Defendant claims that his counsel should have investigated the circumstances surrounding the message and called Allen as a witness to authenticate the evidence. Further, his counsel should have questioned Mack regarding the message. We do not agree that counsel's alleged failures illustrate that his performance fell below an objective standard of reasonableness. First, we agree with the prosecution that, even if Allen had testified, the evidence would likely have been inadmissible. There is nothing in the record or in defendant's arguments to suggest that Allen was a witness to the shooting or had any personal knowledge of the circumstances surrounding the shooting. Thus, the message merely sets forth Allen's unsupported opinion. MRE 701. Further, defendant fails to overcome the presumption of trial strategy. The message, while stating that defendant was not the shooter, does suggest that defendant was at the scene of the crime. Thus, the evidence actually undermines defendant's alibi defense. Trial counsel could have reasonably concluded that an alibi defense gave defendant the best chance for an acquittal. Accordingly, we reject defendant's claim.

Defendant next argues that trial counsel was ineffective because he failed to question witness Wayne Hobbs regarding prior convictions for illegally possessing firearms. Initially, we note that defendant has pointed to no evidence, other than his own affidavit, to demonstrate that Hobbs had prior criminal convictions. Indeed, Hobbs previously denied these allegations at the preliminary examination. Additionally, MRE 609(a) prohibits the impeachment of a witness through evidence of the conviction of a crime unless, at minimum, the crime contained an element of dishonesty, a false statement, or an element of theft. Illegal possession of a firearm would not satisfy MRE 609(a), and, thus, the evidence regarding the alleged conviction(s) would not have been admissible to impeach Hobbs. Defendant's claim fails.

Defendant additionally argues that trial counsel should have sought the admission of testimony from a Yolanda Love, who he claims would testify that she heard three or four gun shots on the night of the shooting. Defendant argues that a dispute over the number of shots fired could indicate that Hobbs also fired a weapon. Assuming Love would have testified as defendant represents, it is a non sequitur to move from this premise to the conclusion that Hobbs must have been armed. Further, Hobbs firing a weapon is irrelevant to the theory of defense pursued at trial, i.e., that defendant was elsewhere when the victim was shot.

Finally, defendant claims that he was denied effective assistance because of trial counsel's failure to investigate possible video camera footage from near the scene of the crime. We disagree. At trial, Officer Trevor Arnold testified that there was a City of Lansing video camera near the scene of the crime. However, Arnold stated that he did not review it because the city cameras do not work very well. On appeal, defendant bases his claim on a copy of Wilcox's police report. In the report, attached to defendant's brief, Wilcox stated that another officer checked the cameras and located Long's vehicle. Wilcox then told Long that her vehicle had been seen, and she admitted to being in the area earlier that day for an appointment. Defendant argues that trial counsel should have obtained the video in order to discredit the victim's testimony that Long's vehicle was used to flee the crime scene. Minimally, trial counsel should have called Wilcox to testify regarding the camera footage referenced in order to discredit Arnold and the investigation generally. We disagree.

The failure to conduct an adequate investigation can constitute ineffective assistance of counsel if it undermines confidence in the outcome of the trial. *People v. Russell*, 297 Mich. App 707, 716; 825 NW2d 623 (2012). Initially, we note that the police report does not definitively state that Long's vehicle was captured by the camera. Indeed, we agree with the prosecution that it seems as though the officers may have been bluffing in order to obtain incriminating information from Long. Regardless, even assuming the alleged camera footage did not reveal Long's vehicle, the evidence would likely not have impacted the outcome of trial given the witnesses' direct testimony that they saw Long's vehicle flee the crime scene. Further, police testimony that video evidence possibly existed but was not pursued likely cut against the prosecution's case. On the other hand, had the video revealed Long's vehicle, or had Wilcox testified that the video revealed Long's vehicle, it would have been harmful to defendant. While Wilcox's testimony may have impeached Arnold to some small degree, it also would have placed Long, defendant's known associate, at the scene of the crime, consistent with witness testimony. Accordingly, we do not believe that this claim of error merits relief.

Finally, defendant argues that reversal is required because of the cumulative effect of the alleged errors in this case. Any one error standing alone may not justify reversal, but the cumulative effect of several errors can cause sufficient prejudice to

warrant reversal. *People v. Gaines*, 306 Mich. App 289, 321–322; 856 NW2d 222 (2014). To prevail, the defendant must establish actual errors at trial, and the aggregate of the actual errors must lead to unfair prejudice. See *People v. LeBlanc*, 465 Mich. 575, 591 n 12; 640 NW2d 246 (2002). Because defendant has failed to demonstrate aggregate errors that cumulatively deprived him of a fair trial, this claim of error fails.

3 See *People v. Ginther*, 390 Mich. 436; 212 NW2d 922 (1973).

4 *People v. Thomas*, unpublished order of the Court of Appeals, entered February 22, 2016 (Docket No. 326645).

*Thomas*, 2016 WL 3421403, at **4-6.

When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982). To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the state court enforced the rule so as to bar the claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub*, 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster v. Adams*, 324 F.3d 423, 436-37 (6th Cir. 2003); *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001). In determining whether a state procedural rule was applied to bar a claim, a reviewing court looks to the last reasoned state-court decision disposing of the claim. *See Ylst*, 501 U.S. at 803; *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).

If a petitioner procedurally defaulted his federal claim in state court, the petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal

habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551-52. The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Here, the Michigan Court of Appeals squarely applied its procedural rule that, in order to raise a claim that trial counsel was ineffective in some manner not apparent on the record, a defendant must either move for a new trial or seek a *Ginther* hearing in the trial court. *Thomas*, 2016 WL 3421403, at *4 (citing *People v. Heft*, 829 N.W.2d 266, 273). A state law procedural rule is adequate and independent when it was "firmly established and regularly followed" at the time of the asserted procedural default. *Rogers v. Howes*, 144 F.3d 990, 992 (6th Cir. 1998) (citing *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)). The Michigan Supreme Court long has held that

> A convicted person who attacks the adequacy of the representation he received at his trial must prove his claim. To the extent his claim depends on facts not of record, it is incumbent on him to make a testimonial record at the trial court level in connection with a motion for a new trial which evidentially supports his claim and which excludes hypotheses consistent with the view that his trial lawyer represented him adequately.

*People v. Hoag*, 594 N.W.2d 57, 59 (Mich. 1999) (quoting *Ginther*, 212 N.W.2d at 925). The rule has been regularly followed in the state appellate courts. *See, e.g., People v. Odom*, 740 N.W.2d 557, 563 & n.15 (Mich. Ct. App. 2007) (where a defendant has failed to move for a new trial or *Ginther* hearing in the trial court, review is limited to mistakes apparent on the record) (citing cases,

including *Ginther*); *People v. Davis*, 649 N.W.2d 94, 100 (Mich. Ct. App. 2002) (same); *People v. Sabin (On Second Remand)*, 620 N.W.2d 19, 21 (Mich. Ct. App. 2000) (citing *People v. Marji*, 447 N.W.2d 835, 839 (Mich. Ct. App. 1989) (same)).  As a consequence, to the extent that Petitioner's claim for relief rests on alleged failures of counsel that depend on facts not apparent from the record, Petitioner's claims are procedurally defaulted, and he makes no attempt to excuse his default by showing either cause and prejudice or actual innocence in the manner set forth in *House*, 547 U.S. at 536, and *Schlup*, 513 U.S. at 327.  Therefore, Petitioner is bound by the record before the Michigan Court of Appeals.

As earlier discussed, in order to establish his claim of ineffective assistance of trial counsel, Petitioner must show the following: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Strickland*, 466 U.S. at 689.  In addition, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

Although the court of appeals cited only Michigan cases, it squarely applied the *Strickland* standard. Not only does the recited standard conform to that of *Strickland*, but also the cited cases expressly rely on *Strickland*. *See Thomas*, 2016 WL 3421403, at *4 (citing *People v. Armstrong*, 806 N.W.2d 676, 681 (Mich. 2011) (citing *Strickland*, 466 U.S. 668)). As a consequence, the Michigan Court of Appeals' decisions on Petitioner's ineffective-assistance claims are entitled to the double deference owed such determinations on habeas review. *Harrington*, 562 U.S. at 10.

A.      Failure to Investigate or Call Karen Allen

Petitioner argues that trial counsel should have investigated or called his sister Karen Allen as a witness to corroborate her earlier text or email message to Olympia Mack, the witness who provided Petitioner an alibi, to the effect that Petitioner was not the shooter. The court of appeals rejected the argument for a series of reasons.

First, the court held that nothing in the record suggested that Allen witnessed the shooting or spoke from personal knowledge, and Petitioner does not dispute that finding in his habeas materials. Moreover, because he procedurally defaulted any claim of evidence outside the record, he would be barred from doing so. *House*, 547 U.S. at 536.

Second, the Court held that the evidence would be inadmissible under Michigan law, a decision this Court must accept as binding. *Stumpf*, 722 F.3d at 746 n.6 (quoting *Bradshaw*, 546 U.S. at 76).

Third, the court of appeals held that Petitioner had failed to overcome the presumption that counsel's decision was strategic. As the court observed, Allen's statement – that Petitioner was not the shooter – suggests that Petitioner was present at the shooting, rather than

elsewhere with Olympia Mack. Declining to make use of a likely inadmissible statement that undercuts the alibi was an entirely reasonable strategic decision. As in the state court, Petitioner makes no attempt to overcome that presumption on habeas review. He therefore utterly fails to demonstrate that the Michigan Court of Appeals unreasonably applied *Strickland* to determine in rejecting Petitioner's claim of ineffective assistance of counsel, especially in light of the double deference owed to the court's decision.

B.      Failure to Impeach Wayne Hobbs with Firearm Conviction

Petitioner complains that his trial attorney was ineffective in failing to impeach Wayne Hobbs with his prior convictions for illegally possessing firearms. The court of appeals again easily rejected the claim.

First, as the court of appeals observed, Petitioner provided no evidence that Hobbs was in fact convicted as Petitioner claims. Petitioner does not claim otherwise. Petitioner therefore failed to develop the record in the state court as required to preserve his claim.

Second, and even more obviously, the court of appeals held that evidence of such a conviction would not have been admissible under MICH. R. EVID. 609(a), as it was not a conviction involving an element of dishonesty, false statement, or theft. As earlier discussed, the court of appeals' determination of the admissibility of evidence controls this Court's decision. *Stumpf*, 722 F.3d at 746 n.6 (quoting *Bradshaw*, 546 U.S. at 76). Moreover, the decision was patently correct under the rules of evidence. As a result, any objection by counsel would have been futile. Counsel's failure to make a frivolous or meritless motion does not constitute ineffective assistance of counsel. *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010); *O'Hara v. Brigano*, 499 F.3d 492, 506

(6th Cir. 2007); *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000).

For both reasons, the Michigan Court of Appeals reasonably rejected Petitioner's claim of ineffective assistance of counsel.

C.      Testimony of Yolanda Love

Petitioner argues the trial counsel should have called Yolanda Love to testify that she heard three or four gunshots, which Petitioner claims would show that the victim also had a gun on the night in question.  As the court of appeals, recognized, however, disputing whether the victim was armed was totally at odds with Petitioner's defense that he was not present when the shooting took place.  Counsel unquestionably acted strategically in not calling Yolanda Love to testify.  The court of appeals correctly determined that Petitioner's argument is meritless.

D.      Failure to Investigate Video Footage

Petition claims that defense counsel was ineffective for failing to investigate whether the city's cameras captured video footage of the vehicle of Chanel Long, Petitioner's girlfriend, near the time of the offense.  The vehicle purportedly was the car used for the perpetrators to flee the scene.

It is well established that "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  *Strickland*, 466 U.S. at 691. The duty to investigate derives from counsel's basic function, which is "'to make the adversarial testing process work in the particular case.'" *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986) (quoting *Strickland,* 466 U.S. at 690). This duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence. *Towns v.*

*Smith*, 395 F.3d 251, 258 (6th Cir. 2005).  "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691.  "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable."  *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); accord *Clinkscale v. Carter*, 375 F.3d 430, 443 (6th Cir. 2004).  A purportedly strategic decision is not objectively reasonable "when the attorney has failed to investigate his options and make a reasonable choice between them."  *Horton v. Zant*, 941 F.2d 1449, 1462 (11th Cir.1991) (cited in *Combs v. Coyle*, 205 F.3d 269, 288 (6th Cir. 2000)).

Courts have not hesitated to find ineffective assistance in violation of the Sixth Amendment when counsel fails to conduct a reasonable investigation into one or more aspects of the case and when that failure prejudices his or her client. For example, in *Wiggins v. Smith*, 539 U.S. 510, 524-29 (2003), the Supreme Court held that the petitioner was entitled to a writ of habeas corpus because his counsel had failed to conduct a reasonable investigation into potentially mitigating evidence with respect to sentencing.  *Id.*  According to the Court, "counsel chose to abandon their investigation at an unreasonable juncture, making a fully informed decision with respect to sentence strategy impossible."  *Id.* at 527-28.  Consistent with *Wiggins*, the Sixth Circuit has held, in a variety of situations, that counsel's failure to investigate constituted ineffective assistance in violation of the Sixth Amendment.  *See, e.g., Towns*, 395 F.3d at 258-59. (holding that defense counsel's failure to investigate potentially important witness in robbery and felony murder trial was unreasonable, and thus constituted ineffective assistance, in violation of Sixth Amendment); *Combs*, 205 F.3d at 287-88 (holding that defense counsel was constitutionally ineffective for failing to investigate adequately his own expert witness, who testified that, despite the defendant's

intoxication at the time of the crime, the defendant nevertheless was capable of forming the requisite intent to commit the crimes); *Sims v. Livesay*, 970 F.2d 1575, 1580-81 (6th Cir. 1992) (holding that counsel was constitutionally ineffective for failing to conduct an investigation into certain physical evidence that would have undermined the prosecution's theory that the victim was shot at a distance); *Blackburn v. Foltz*, 828 F.2d 1177, 1183 (6th Cir. 1987) (holding that counsel's failure "to investigate a known and potentially important alibi witness" constituted ineffective assistance because "[c]ounsel did not make any attempt to investigate this known lead, nor did he even make a reasoned professional judgment that for some reason investigation was not necessary"); *see also Clinkscale*, 375 F.3d at 443 (collecting cases in which counsel's failure to investigate a potentially important witness constituted ineffective assistance).

However, Petitioner completely fails to show that the city cameras actually captured Chanel Long's vehicle or that counsel would have discovered the fact had he investigated. Instead, Petitioner merely references a police report, which indicated that the police told Long they had the camera footage before she admitted to having been in the area earlier in the day, whether that representation was truthful or not. A court "cannot conclude that [] counsel was deficient solely on [the petitioner's] version." *See Fitchett v. Perry*, 644 F. App'x 485, 489 (6th Cir. 2016) (holding that "sheer speculation" of inadequate investigation does not state a claim). "It should go without saying that the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'" *Burt v. Titlow*, 134 S. Ct. 10, 17 (2013) (quoting *Strickland*, 466 U.S. at 689).

Moreover, as the state court noted, the evidence was irrelevant to the claim that Petitioner was at another location. Indeed, had counsel investigated and located Long's vehicle on

-24-

the camera, the admission of that evidence could likely have harmed Petitioner's case.  So, too, would Witlow's testimony on the issue, if the vehicle was located.  The court of appeals reasonably applied the clearly established Supreme Court precedent, and Petitioner fails to overcome the double deference owed to that determination.  *Harrington*, 562 U.S. at 10.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service.  It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted.  *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.


Dated:    June 16, 2017                     /s/ Robert J. Jonker
                                            ROBERT J. JONKER
                                            CHIEF UNITED STATES DISTRICT JUDGE